**HARDINGE COMPANY, INCORPORATED, Plaintiff,**

v.

**JONES & LAUGHLIN STEEL CORPORATION, Defendant.**

Civ. A. No. 15624.

United States District Court
W. D. Pennsylvania.

July 7, 1958.

Julian Miller, of Brown, Critchlow, Flick & Peckham, Pittsburgh, Pa., John Gibson Semmes, Benjamin Dulany, Washington, D. C., for plaintiff.

Gordon R. Harris, Pittsburgh, Pa., Davidson C. Miller, Stevens, Davis, Miller & Mosher, Richard K. Stevens, Washington, D. C., for defendant.

MARSH, District Judge.

This is an action for patent infringement. Plaintiff alleges that the defendant has infringed plaintiff's rights granted under letters patent numbered 2,235,-928 and 2,381,351. Jurisdiction is based on 28 U.S.C.A. § 1338.

The matter here under consideration is defendant's motion for summary judgment under Rule 56(b), Fed.R.Civ.P., 28 U.S.C.A. By this motion the defendant raises for the first time—not having done so previously in his answer to the complaint—the defense of "unclean hands". The defendant's motion—based on the pleadings, defendant's discovery record, certain exhibits, and several affidavits—alleges that plaintiff is guilty of

unclean hands in six separately enumerated respects.

The plaintiff, in addition to his specific defense to each of the enumerated allegations of unclean hands, contends that defendant's motion should be summarily denied since the defense of unclean hands is an affirmative defense which is in effect waived by virtue of Rules 8(c) and 12(h), Fed.R.Civ.P., 28 U.S.C.A., if, as here, not raised in a responsive pleading.

■ We cannot agree with this contention of the plaintiff. Plaintiff by its suit seeks equitable relief; to be entitled to such relief it must come before this court with clean hands. Root Refining Co. v. Universal Oil Products Co., 3 Cir., 1948, 169 F.2d 514. It is firmly established, moreover, that *"whenever* in the course of the proceeding the court is informed *in any way* that the plaintiff is without clean hands * * * the court should inquire into the facts of its own accord, and if it finds the charge to be true relief should not be granted." Frank Adam Electric Co. v. Westinghouse Elec. & Mfg. Co., 8 Cir., 1945, 146 F.2d 165, 167. (Emphasis supplied.) " 'In applying the "clean hands" maxim the court is concerned primarily with protecting its own integrity from improper action by a party. * * * The latter [clean hands maxim] need not be even pleaded * * *' " Ibid., at pages 167–168. See also, Hall v. Wright, D.C.S.D.Cal.1954, 125 F. Supp. 269.

The position which we take as to the merits of the defendant's motion makes it unnecesary for us to treat plaintiff's contention that because defendant has chosen to raise its affirmative defense by this motion, plaintiff has been denied ample time to refute the defense. We mention, however, that at the argument on defendant's motion, plaintiff was of-

fered additional time to file counter-affidavits.[1]

Before proceeding to consider defendant's points seriatum, we set forth the principles which in this Circuit are applicable to the consideration of a motion for summary judgment:

■ The moving party has the burden of showing that there is no genuine issue of a material fact,[2] which under the applicable substantive law would entitle him to judgment as a matter of law.[3]

■ " * * * [S]ummary judgment may be granted only if * * * 'there is no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law.' Fed.R.Civ.P. 56(c), 28 U. S.C.; see F. A. R. Liquidating Corp. v. Brownell, 3 Cir., 1954, 209 F.2d 375. Any doubt as to the existence of a genuine issue of fact is to be resolved against the moving party. Sarnoff v. Ciaglia, 3 Cir., 1947, 165 F.2d 167, 168. * * * [D]ocuments filed in support of a motion for summary judgment are to be used for determining whether issues of fact exist and not to decide the fact issues themselves. Frederick Hart & Co. v. Recordgraph Corp., 3 Cir., 1948, 169 F. 2d 580." [4]

We proceed now to consider each of defendant's six allegations of unclean hands.

Defendant's first and second points are based on the same set of allegations by the defendant,[5] and will be considered here as one. The crux of these allegations is that plaintiff has engaged in discriminatory pricing policies with respect to its exploitation of the mill controls alleged by plaintiff to come within the scope of its patent No. 2,235,928.

In support of its position, the defendant relies basically on certain depo-

---

1. Transcript of May 19, 1958, p. 58.

2. Fairbanks, Morse & Co. v. Consolidated Fisheries Co., 3 Cir., 1951, 190 F.2d 817.

3. Moore's Federal Practice, Vol. 6, § 56.15 [3], p. 2123.

4. Lawlor v. National Screen Service Corporation, 3 Cir., 1956, 238 F.2d 59, 65, judgment vacated on other grounds, 1957, 352 U.S. 992, 77 S.Ct. 526, 1 L.Ed.2d 540.

5. Defendant's "Brief in Support of Motion Under Rule 56(b)", p. 8.

sition statements of Robert Jackson Russell, vice-president, treasurer and sales manager of the plaintiff corporation, and on certain of defendant's discovery exhibits[6] consisting mainly of plaintiff's price schedules for the "Electric Ear"—the name used by plaintiff for its control unit—which plaintiff contends is within the scope of its patent No. 2,235,928.

There is no doubt that the price which plaintiff charges for the "Electric Ear" varies (1) according to the general horsepower rating of the mill motor with which the "Ear" will be used, (2) according to the f. o. b. shipping point, (3) according to whether the "Ear" is sold (a) with new Hardinge built or licensed mills at the time the mill is sold, (b) separately for use on any ball, pebble or rod mill anywhere, (c) for use with any special mill other than specified under (a) and (b).[7]

Defendant contends that the price differentials under (3) above are arbitrary and discriminatory and constitute both a misuse of the patent monoply (for the purpose of gaining a monopoly in unpatented mills) as well as a violation of the Robinson-Patman Act, 15 U.S.C.A. § 13.

The plaintiff contends that these price variances are justifiable differentials based on internal accounting policies, the increased cost of servicing the "Ear" when it is sold as a separate unit rather than as a component of a lump sum sale, and the increase in cost of servicing when the "Ear" is used with other than conventional grinding mills (such as ball or rod mills).[8]

From the foregoing, it can readily be seen that a genuine issue of a material fact exists, viz.: whether the plaintiff's pricing policy with reference to the "Electric Ear" is arbitrary and discriminatory or is justifiable. Both contentions are fundamentally based on affidavit-type evidence, and under the decisions of this Circuit, as previously set forth, we may look to affidavits only to determine if a genuine issue of fact exists; we may not proceed further and decide any such issue. It follows that defendant's first two points will not support its motion.

In its third point, the defendant contends that plaintiff is guilty of deliberate mismarking of its "Electric Ear" in violation of 35 U.S.C.A. § 292, and therefore not entitled to the equitable relief here sought. This mismarking, it is contended, consists of plaintiff's affixing to its "Electric Ear" assembly a metal plate[9] having inscribed thereon, inter alia, the name "Electric Ear" and listing two patent numbers, viz.: No. 2,235,928 and No. 2,381,351. It is defendant's position here that plaintiff well knows that patent No. 2,381,351 does not cover the assembly to which the name plate is affixed, and that plaintiff deliberately so labeled the assembly in order to deceive the public into believing that the "Ear" was protected by the 2,381,351 patent, which has over four years longer to run than the 2,235,928 patent, which expired in March, 1958.

The defendant candidly concedes that "the case law seems to indicate that mere mismarking often innocent and by error is not a defense in infringement suits. * * *"[10][11]

---

6. Especially defendant's discovery exhibits 69 and 86.

7. See defendant's discovery exhibit 86.

8. See affidavit of Robert Jackson Russell, dated May 13, 1958, ¶¶ 5, 6, 7. Affidavit of Harlowe Hardinge, dated May 15, 1958, ¶¶ 2, 3.

9. A photograph of this metal plate was submitted by defendant as its discovery exhibit 87.

10. Defendant's "Brief in Support of Motion Under Rule 56(b)", p. 12.

11. Victoria-Vogue, Inc., v. Valcourt, Inc., D.C.S.D.N.Y.1956, 148 F.Supp. 160; Guide v. Desperak, D.C.S.D.N.Y.1956, 144 F.Supp. 182; Julian B. Slevin Company v. Bartgis Brothers Company, D.C.Md. 1956, 142 F.Supp. 688 (cases under 35 U.S.C.A. § 292).

The plaintiff contends that it is entirely proper for it to have listed the two patents on the name plate in question, since the "Electric Ear" patent (No. 2,235,928) may be a useful component of the system covered by the later patent. (No. 2,381,351).[12]

The plaintiff, by the affidavit of Harlowe Hardinge, then, raises a genuine issue as to plaintiff's intent in listing the two patent numbers on the name plate affixed to its "Electric Ear" assembly; such an issue existing, it must be left to the trier of the facts.

In point four of its motion, the defendant contends that the plaintiff is using this suit to obtain through delay and otherwise an unfair advantage over a competitor in the grinding mill business, said competitor not being a party to this suit.

Little need be said on this point. It is obvious that the pivotal issue here is the very abstract and difficult question of the plaintiff's motive in instituting this suit. On this point, the defendant attempts to shoulder its burden of showing that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law, by making general references to the history of this case to prove, in effect, that the plaintiff can really only recover nominal money damages from the defendant and nothing else. Therefore, the defendant contends, plaintiff's real motive in engaging in this protracted and expensive litigation is to embarrass the competitive position of defendant's indemnitor who supplied the alleged infringing equipment.

Suffice it to say that plaintiff raises a genuine issue as to plaintiff's purpose in bringing this suit by the affidavit of Harlowe Hardinge, president of the plaintiff corporation, which states in part that "the sole purpose of the present litigation is to enforce Plaintiff's rights in and under the several patents listed in the bill of complaint. * * * " [13]

In its fifth point, the defendant charges that the plaintiff is guilty of misrepresentation to the Patent Office in obtaining patent No. 2,235,928. Briefly, the defendant alleges that plaintiff represented to the Patent Office that a certain German patent (Babcock and Wilcox No. 540,290), which had been cited by the patent examiner as being a prior patent covering certain of plaintiff's claims under the present patent No. 2,235,928, was inoperative and therefore not a valid reference or proper basis for rejecting plaintiff's application. It is contended by the defendant that this representation as to the inoperativeness of the German patent was made as a matter of fact, whereas in truth it was largely a matter of the applicant's opinion and, therefore, a misrepresentation constituting unclean hands.

We find it rather difficult to determine just exactly what the defendant is urging in this respect. If the defendant is implying that in fact the German patent was operative, the defendant has certainly pointed to no proof to substantiate this, nor has it pointed to anything which would indicate that Harlowe Hardinge had reason to believe that in fact the German patent was operative. The mere fact that Hardinge sought—as indicated by defendant's exhibit 22— the opinion of an expert as to the workability or non-workability of the German patent is not sufficient evidence from which we can say as a matter of law that Hardinge in fact believed the German patent was workable,—despite the absence of counter-affidavits by the plaintiff on this point. Moreover, from a study of the exhibits furnished by the defendant, and the excerpts contained in defendant's brief of statements allegedly made by the plaintiff or his agents when applying for patent No. 2,-235,928, it clearly appears that the statements of inoperativeness were based on

12. Affidavit of Harlowe Hardinge, dated May 14, 1958, ¶ 7.

13. Affidavit of Harlowe Hardinge, dated May 14, 1958, at ¶ 5.

a study of the German patent documents and not on any alleged observation of the assembly itself, so that they were obviously meant to be statements of opinion, in the technical sense of the word, and not statements of fact.

The defendant's fifth point is not persuasive.

 Finally, defendant takes the position that plaintiff is guilty of unclean hands with respect to his conduct regarding a certain patentee named R∅der. The defendant contends that on January, 3, 1939, Harlowe Hardinge stated under oath in the application which became patent No. 2,235,928 that " '* * * he verily believes himself to be the original, first and (2) sole inventor of the improvements in Apparatus And Method For Controlling Grinding Device described and claimed in the annexed specifications * * *' ",[14] whereas in fact Hardinge knew as early as July 8, 1938, that on May 18, 1936, one Carl R∅der had filed a patent application in Great Britain for a sonic control for grinding and crushing mills. The defendant advances several arguments, which we need not specifically list, all of which defendant urges tend to support its contention that Hardinge did not believe that his invention predated that of R∅der.

The plaintiff raises a genuine issue of material fact on this point by the affidavit of Harlowe Hardinge, dated May 14, 1958, wherein under ¶ 8 at page 3 the affiant states:

> "To the best of affiant's knowledge and recollection, based upon the records available to him, the first reduction to practice of a workable device was during the Winter of 1935–1936."

This date clearly predates that of the R∅der patent and counsel for the defendant during the argument admitted that if that date were true then its motion must fail.[15] The defendant, however, points to the fact that in answer to interrogatories, Mr. Hardinge stated that the first reduction to practice was in October, 1936. We cannot resolve issues of credibility on a motion for summary judgment.

The defendant's motion is denied. An appropriate order will be entered.

---

14. Defendant's "Brief in Support of Motion Under Rule 56(b)", p. 24.

15. Transcript, May 19, 1958, p. 16.