Charles STEWART and Carolyn C. Stewart, Plaintiffs,

v.

WAPPINGERS CENTRAL SCHOOL DISTRICT, Paul Adams, Supervisor of Transportation, Bruce Reynolds, Supervisor of Finance, all of the Wappingers Central School District, Individually and in their official capacities, Defendants.

No. 76 Civ. 3617.

United States District Court, S. D. New York.

May 30, 1977.

Crain, Cohen & Rones, Newburgh, N. Y., for plaintiffs.

Barry, McTiernan, Moore & Siracuse, Newburgh, N. Y., for defendants.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Defendants have moved, pursuant to Rule 12, F.R.Civ.P., to dismiss the amended complaint for lack of subject matter jurisdiction, failure to state a claim, and untimeliness. Although plaintiffs originally had cross-moved for summary judgment, they now have requested leave to withdraw this motion. Since the motion to dismiss will

not dispose of the case, leave to withdraw the summary judgment motion is granted without prejudice to its renewal after the completion of discovery.

The amended complaint seeks damages for racial discrimination and breach of contract in denying employment to plaintiff Charles Stewart. Stewart was employed by defendant Wappingers Central School District ("Wappingers") as a driver-cleaner of school buses. He secured this position in 1965, left in 1967, and returned in 1970, when he joined Teamsters Union Local # 445. In June 1970, he acquired seniority status. In August of that year, the Union and the School District entered into a collective bargaining agreement which governed Stewart's employment.

In January 1971, Stewart asked defendant Paul Adams, the Transportation Supervisor at Wappingers and plaintiff's immediate superior, for a day off to observe the birthday of Reverend Dr. Martin Luther King, Jr. Adams denied this request; it was subsequently granted by the Superintendent of Wappingers. Plaintiff alleges, and such allegations will be taken as true for the purposes of this motion, *see Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), that Adams' denial was accompanied by extreme anger and hostility, and that subsequently Adams and defendant Bruce Reynolds, Wappingers' Finance Supervisor, subjected Stewart to selective discriminatory treatment, harassment and verbal abuse.

In September 1971, Stewart sustained a back injury in the course of his employment and was absent from work from October 1971 to January 1972. He requested reinstatement on January 17, 1972 in a capacity which would entail "light duties," but Adams denied this request, offering Stewart work similar to that formerly performed. For medical reasons, Stewart was unable to accept this offer. However, Stewart asserts that as a result of attrition and creation, light duty jobs became available, and

were assigned to white driver-cleaners, some of whom had suffered non-job related injuries or who lacked the seniority accorded plaintiff.

On July 9, 1973, Stewart filed a complaint with the New York State Division of Human Rights, alleging discrimination in defendants' employment practices and seeking reinstatement. Four days before the Division reached a no probable cause determination and dismissed the complaint, Stewart was rehired as a Stock Room Clerk for bus parts, a light duty position he held until April 1974. On February 21, 1974, the Division's decision was affirmed by the New York State Human Rights Appeal Board. No judicial review of this determination has been sought. Stewart contends that he never received a copy of the Board's decision.

Stewart has alleged violations of his rights under 42 U.S.C. §§ 1981 and 1983 and under the Constitution of the United States, based jurisdictionally on 28 U.S.C. §§ 1343 and 1331, respectively; and has included a pendent state claim for breach of the collective bargaining agreement. Defendants contend that this Court lacks subject matter jurisdiction over the § 1981 claim since Stewart has failed to exhaust his federal administrative remedies, and over all the federal claims on the grounds that Wappingers and its employees, Adams and Reynolds, acting in their official capacities, are not subject to suit. Alternatively, they appear to argue that the state agency determination forecloses a § 1981 attack. Addressing plaintiffs' state claim,[1] they posit that retention of jurisdiction is inappropriate upon the failure of the federal claims; and that, in any event, the allegations of breach of contract fail to state a claim upon which relief can be granted. As a last resort, a charge of laches is proffered.

■■■ Defendants correctly contend that any claim predicated on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* cannot succeed for failure of plain-

---

1. Defendants additionally contend that the cause of action sounding in defamation is untimely. Since no defamation claim is asserted in the amended complaint, this argument is moot.

tiffs to initially pursue federal administrative relief.[2] However, by contrast, § 1981 was designed to afford a federal remedy for acts of discrimination separate and distinct from any relief available under Title VII; consequently, exhaustion is not required, *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Gresham v. Chambers,* 501 F.2d 687 (2d Cir. 1974).

Whether defendants are suable entities is an issue properly addressed solely to the § 1983 claim. This section authorizes damage suits for violations of constitutional rights by "every person" acting under color of State law. A municipality has been held to be outside the definition of "person" for § 1983 purposes, *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and in *Monell v. Department of Social Services,* 532 F.2d 259 (2d Cir. 1976), the Second Circuit concluded that a Board of Education was similarly insulated from suit under § 1983. *Monell* additionally held that city officials named in the complaint were also without the scope of § 1983 since they were sued solely in their official capacities, thus necessitating a possible damage award payable by a city which was itself protected from suit.

It is clear that under *Monell* the § 1983 claim against Wappingers must fail. As against the named defendants Adams and Reynolds, however, *Monell* does not control. The amended complaint expressly charges these defendants with liability not only in their official capacities, but also individually. A damage award, if any, based on individual liability, would be payable out of the named defendants' pockets and not the public till. Consequently, the action cannot be viewed as essentially and only one against the school district. *See Gresham v. Chambers, supra,* at 690.

In examining the claims brought directly under the Constitution and under § 1981, analogy to § 1983 is unavailing.

The distinctions from § 1983 in the legislative history and statutory language of § 1981, on the one hand, and in the jurisdictional requirements of and scope accorded the protection of rights by the Constitution, on the other, result in a broader grant of available remedies than that found under § 1983. These differences were fully explored in *Skyers v. Port Authority of New York and New Jersey,* 431 F.Supp. 79 (S.D.N.Y.1976), in which I ruled that a defendant protected from suit under § 1983 may nonetheless be subject to attack under both § 1981 and the Constitution. *See also Campbell v. Gadsden County District School,* 534 F.2d 650 (5th Cir. 1976). Thus, both the § 1981 and constitutional claims are cognizable against all defendants and subject matter jurisdiction exists with respect thereto.

Defendants' motion to dismiss based on the contention that the § 1981 claim is foreclosed by the State agency determination is essentially a request for summary judgment under Rules 12(c) and 56, F.R. Civ.P. and will be treated as such. Whether an administrative finding of no probable cause with respect to a charge of discriminatory treatment has a *res judicata* effect barring a subsequent § 1981 action was left open in *Mitchell v. National Broadcasting Co.,* 553 F.2d 265 (2d Cir. 1977). In *Mitchell,* the plaintiff filed a charge of discrimination with the New York State Division of Human Rights, which dismissed the complaint on the ground of lack of probable cause. This decision was affirmed by the State Human Rights Appeal Board. While the appeal was pending, charges were filed with the Equal Employment Opportunity Commission ("EEOC"), which issued a finding of no probable cause approximately one year later. In the meantime, plaintiff sought review of the Appeal Board's order in the Appellate Division of the New York State Supreme Court, which affirmed the ruling. Approximately one year following the State court proceedings, and nine months after the issuance of the EEOC findings, plaintiff commenced a § 1981 suit

---

**2.** No Title VII claim is contained in the amended complaint.

in federal court. The Second Circuit affirmed the district court dismissal of the complaint on the grounds of *res judicata.* In considering the question, the Court of Appeals recognized the similarity of the issues presented, but stressed plaintiff's pursuit of judicial review of the State agency ruling and the finality accorded the Appellate Division's determination by New York courts, and indicated that the fact of judicial review was crucial to the result obtained.

Had the appellant brought her § 1981 claim without resorting to judicial review of the state agency's determination, a number of considerations would weigh against barring the federal action on res judicata grounds, including the undesirability of allowing the deferral of a Title VII claim to the state agency to foreclose a § 1981 action and the usefulness of having state administrative agencies attempt conciliation of discrimination claims prior to filing an action in federal court, . . . Once review of a state agency determination is sought in the state courts, however, these considerations disappear.

*Id.* at 275.

■ According to *Mitchell*, then, "[r]es judicata attached when plaintiff chose to pursue her claim in the state courts, and not before." *Id.* at 276. Where, as here, Stewart chose not to pursue his administrative remedy to final judicial determination, the distinction drawn by *Mitchell* between a state judicial and a state administrative determination for *res judicata* purposes is thrown into sharp relief, and policy would dictate that foreclosure not result. Thus, as it pertains to this issue, defendants' motion is denied.

■ Survival of the federal claims moots defendants' suggestion that the exercise of pendent jurisdiction over the related state claim for breach of the collective bargaining agreement is inappropriate. Since both federal and state claims "derive from a common nucleus of operative fact," the exercise of pendent jurisdiction is proper. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

Defendants' attack on the sufficiency of the state claim is twofold: that by the express terms of the collective bargaining agreement, defendants' refusal to transfer Stewart to a light duty position was a proper exercise of their discretion thereby precluding a finding of breach, and that the finding of the State Human Rights Appeal Board conclusively establishes that Stewart, and not defendants, breached the agreement.

Article III of the collective bargaining agreement provides in subdivision 1:

Seniority shall prevail except as limited by Article X hereof in that the employer recognizes the general principle that senior employees shall have preference of employment and promotional opportunity for non-competitive jobs and to choose their shifts and to work at the job for which the pay is highest, provided such employees are qualified for such work . . . .

Article X provides in part:

An employee in one job classification or division of the system may be used in another job classification or division only if no work opportunities are lost by men normally performing work in that job classification or division to which he is transferred. Transfers within the same job category will be permitted only at the option of the District.

■ Based on the above clauses, plaintiffs maintain that only transfers within the same job category are discretionary, and that in all other cases seniority controls, assuming that no one is bumped as a result. It is their contention that white driver-cleaners, some with less seniority than Stewart, were transferred to other job classifications or divisions, and that Stewart's transfer request was not restricted to one within his particular job category. Therefore lack of compliance with the agreement is urged. Even were defendants correct in maintaining that all transfers, by virtue of these provisions, are discretionary,

plaintiffs alternatively rely on Article I. This provision states that the school board's purpose in recognizing the Union is to provide "an orderly means of settlement of differences, promptly and fairly, as they arise, and [t]o assure equitable treatment of its employees . . . ." Plaintiffs assert that Article I, read in conjunction with Articles III and X, creates an obligation on the part of defendants to act fairly and equitably when faced with transfer requests—a duty which was allegedly breached. In light of these contentions, it cannot be said that the allegations of the amended complaint reveal "beyond doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Church v. Hegstrom,* 416 F.2d 449, 450 (2d Cir. 1969). Plaintiffs will be given the opportunity to offer proof on the issue.

Again, treating defendants *res judicata* argument, as it relates to the state claim, in summary judgment fashion, I find it to be without merit. In affirming the no probable cause determination, the State Human Rights Appeal Board stated that "the record shows that respondents terminated complainant's employment for refusing to accept duty assignments and not because of any discriminatory action." Defendants assert that this language conclusively establishes that Stewart, and not defendants, breached the agreement.

Assuming the Appeal Board's finding to be providently made,[3] it cannot be invoked to foreclose plaintiffs' claim. To accept the Appeal Board's formulation of a non-discriminatory rationale—Stewart's refusal to accept Adams' offer to return in a capacity similar to his former employment—as conclusive of a breach of the agreement by Stewart would be to judge an issue which was never litigated and which, in any event, would not be dispositive of whether defendants complied with the agreement. The only issue presented the agency was whether the acts complained of evidenced discriminatory treatment. Whether those acts constituted a breach of the collective bargaining agreement is a different question, entailing a consideration of the terms and import of the agreement, an examination of defendants' conduct in light thereof, and a finding that defendants breached an obligation thereunder which would enure to Stewart's benefit. This question was neither addressed nor determined by the agency; nor would the parties expect it to be litigated before the Division. Consequently, even were the agency's ruling to be given a *res judicata* effect, *see Taylor v. New York Transit Authority,* 309 F.Supp. 785, (E.D.N.Y.), *aff'd* 433 F.2d 665 (2d Cir. 1970), it would not operate to bar plaintiffs' claim.

The final assault on the complaint on the grounds of laches is untenable. Plaintiffs are not seeking equitable relief. Their suit to vindicate constitutional and federally created statutory rights, is merely one for damages, *see Monell v. Department of Social Services, supra,* at 267. It is essentially one "at law" to which the defense of laches does not apply; rather, the statute of limitations is controlling. *Morgan v. Koch,* 419 F.2d 993 (7th Cir. 1969).

Defendants' motion to dismiss the § 1983 claim against Wappingers is granted; in all other respects it is denied. Plaintiffs' motion for summary judgment is deemed withdrawn.

IT IS SO ORDERED.

---

**3.** The State Division of Human Rights, in dismissing the complaint for lack of probable cause, based its determination on Stewart's subsequent reinstatement to an agreeable light duty position. No mention was made of any refusal by him to accept Adams' offer of reinstatement to his original duties. The Appeals Board merely concluded that the Division's decision was neither arbitrary, capricious nor an unwarranted exercise of discretion.. In making the finding relied on by defendants, it went further than did the Division, which investigated the complaint, in ascribing a non-discriminatory motive to defendants' failure to reinstate and transfer Stewart when originally requested to do so.