496 A.2d 317

Jamie MacDermott SMITH

v.

Anne E. GEHRING.

No. 533, Sept. Term, 1985.

Court of Special Appeals of Maryland.

Sept. 5, 1985.

360

Susan D. Campbell, Baltimore, for appellant.

Austin W. Brizendine, Jr., Towson, for appellee.

Argued before GARRITY, ADKINS and KARWACKI, JJ.

ADKINS, Judge.

The issues in this case are (1) whether what appellant characterizes as misjoinder of a defendant and what appellee characterizes as mere misnomer can be corrected by amendment of a pleading after limitations have run, and (2) whether the doctrine of laches is now available as a defense to a legal, as opposed to an equitable, claim. The Circuit

Court for Baltimore County (DeWaters, J.) accepted the amendment and refused to apply laches. We affirm.

## Facts

Since this is an expedited appeal, it is before us on an agreed statement of the case. That statement frames the issues for us. It reveals that on May 5, 1972, the Circuit Court for Baltimore County entered two judgments, in the total amount of $8,000 plus interest and costs, against Warrington G. Smith, who then owned real property known as 534 Allegheny Avenue, Towson. In 1977 Warrington Smith, through a straw party, conveyed the property to himself and his daughter, appellant Jamie MacDermott Smith, as joint tenants. That tenancy was severed on April 5, 1983, when Josef Gehring, husband of appellee Anne Gehring, purchased Warrington's interest at a sheriff's sale prompted by a judgment creditor not involved in this case. Warrington Smith died ten days later, but as of the date of his death (and ever since), 534 Allegheny Avenue was (and has been) owned by Josef Gehring and Jamie MacDermott Smith as tenants in common.

The two judgments in this case were assigned (for consideration) to appellee Ann Gehring. Then began the proceedings that have produced this appeal. On April 24, 1984, but a few days less than twelve years after the entry of the 1972 judgments against Warrington Smith, appellee filed an order to issue a *scire facias* on each of the judgments. Each order directed the writ to be served on E. June Smith [widow of Warrington and mother of appellant Jamie], heir-at-law of Warrington; E. June Smith, personal representative of Warrington's estate; E. June Smith, guardian and next friend of Jamie, heir-at-law and terre-tenant, and Josef Gehring. Pursuant to directions contained in the orders, writs of *scire facias* were served on E. June Smith, individually, as personal representative, and as appellant's guardian and next friend, and on Josef Gehring. Writs were also posted on the property.

At oral argument we were told that E. June Smith responded to the writs by asserting that she had no interest in the property in any capacity.[1] That prompted appellee to file amended orders for *scire facias*. These were identical to the initial orders, except that they added appellant Jamie as "a minor and terre-tenant of Warrington G. Smith, deceased." These amended orders, however, were not filed until June 29, 1984—more than twelve years after the issuance of the 1972 judgments. Appellant answered, asserting that the claim against her was barred by the statute of limitations.[2] She also asserted that the claim was barred by laches. Judge DeWaters rejected both defenses and entered an order continuing the lien of the judgments against the property. Appellant, who attained her majority on March 28, 1985, appealed.

### *Misnomer v. Misjoinder*

It is appellant's position that the original *sci. fa.* orders did not name her as a defendant; instead they named her mother as her guardian and next friend. An infant must be sued in her own name; if she is not named in the complaint,

---

1. This is incorrect. In point of fact, June Smith only disclaimed any interest in the property as heir or personal representative of Warrington. She said nothing about any interest she might have held as appellant's guardian, a status she held by appointment of the Orphans' Court of Baltimore City; *see* p. 368, *infra*. We cannot be sure from the record whether June Smith was guardian of appellant's person, of her property, or both. We note that § 13-101(e) of the Estates and Trusts Article defines a guardian as "one appointed by a court ... to manage the property of ... a minor" and excludes a guardian of the person from that definition. If June Smith was guardian in that sense, she had an interest, as guardian, in appellant's property. Estates & Trusts Art. § 13-106—comment to former Art. 93A § 106; *see also* §§ 13-201 and 13-202.

2. By virtue of § 5-102(a)(3) an action on a judgment must be "filed within 12 years after the cause of action accrues...." *See also* Md.Rule 2-625: "A judgment for a sum certain expires 12 years from the date of entry or most recent renewal. At any time before expiration of the judgment, the judgment holder may file a notice of renewal and the clerk shall enter the judgment renewed." Rule 2-625 was not in effect when the *scire facias* proceedings involved in this case were brought.

she is not a party. 43 C.J.S. "Infants" § 221(c). Because of this, she says there was a nonjoinder or misjoinder that could not be corrected by amendment after limitations had run. Appellee, on the other hand, contends that there was a mere misnomer that could be corrected by amendment even after passage of the twelve-year period of limitations. Judge DeWaters, as we have seen, agreed with appellee. So do we.

The problem of amendment of a complaint after limitations has expired is one of relation back. For example, if an amendment states no new cause of action—if "the operative factual situation remains essentially the same" after the amendment as it was before it—the doctrine of relation back applies. The amended cause of action is not barred by limitations. *See Crowe v. Houseworth*, 272 Md. 481, 485, 325 A.2d 592 (1974). Where an amendment merely corrects the name of an original party, but does not add a new party, the doctrine is applicable. *Id.* But if a totally new defendant is added, the doctrine of relation back does not apply. *Talbott v. Gegenheimer*, 237 Md. 62, 63–64, 205 A.2d 285 (1964).

The problem of new defendant versus mere misnomer resolves itself into a question of who was intended to be sued, and whether that party had timely knowledge of the action. In *Abromatis v. Amos*, 127 Md. 394, 96 A. 554 (1916), for instance, Amos sued Peter Abromatis in ejectment and process was issued for Peter. It was served, however, on Joseph Abromatis, the individual actually in possession of the land. The Court of Appeals held that an amendment to the declaration, substituting Joseph for Peter, was proper once the trial court was satisfied that Joseph, the party summonsed as defendant, was in fact the party intended to be sued. 127 Md. at 404, 96 A. 554. Similarly, in *Western Union Telegraph Co. of Baltimore City v. State Use of Nelson*, 82 Md. 293, 33 A. 763 (1896), the plaintiff named as defendant Western Union Telegraph Co., a New York corporation. The intended defendant was

Western Union Telegraph Co. of Baltimore City, a Maryland corporation. Summons was served on an individual who happened to be an officer and manager of both corporations. When the pleading was amended, after limitations had run, to designate the Maryland corporation as defendant, the Court of Appeals rejected the statutory bar, reasoning that the amendment only corrected the name of the party actually summonsed. 82 Md. at 307, 33 A. 763.

More recently, the Court reached the same result in *McSwain v. Tri-State Transportation Co., Inc.*, 301 Md. 363, 483 A.2d 43 (1984). There, the plaintiff named in his declaration Tri-State Trucking, although he intended to sue a totally different corporation, Tri-State Transportation. He gave Transportation's address in the declaration against Trucking, and the resident agents of both corporations were served. As in *Western Union* the Court of Appeals rejected the argument that the action was barred by limitations. Pointing out that Transportation was well aware, both before and after suit, that it was the intended defendant, the court held that "the designation of Trucking was a [mere] misnomer." 301 Md. at 366, 483 A.2d 43.

In each of these cases, the correct defendant—the one actually intended to be sued—was served with process before limitations had run. This fact, however, is not critical. The critical factors are (1) who, on the facts of the case, was the appropriate defendant, and (2) whether that party had notice of his, or her, or its, intended status as defendant within the limitations period. In each of the three cases we have discussed, the significance of service of process was that by that means notice to the intended defendant was made apparent. In *McSwain* the Court of Appeals relied not only on service of process, but also on pre-suit notice to the intended defendant, Transportation. That service of process on the intended defendant is not essential to stop the running of limitations appears from our decision in *Reed v. Sweeney*, 62 Md.App. 231, 488 A.2d 1016 (1985).

*Reed* was not a misnomer case. There was no question that Sweeney and his co-defendants were the parties Reed intended to sue to recover for injuries incurred in a motor vehicle accident. Thus, factor (1) was not an issue. But factor (2) was. Reed filed suit within the period of limitations; process was issued; it was not, however, served on the defendants until after the statute had run. Judge Moylan, for this court, pointed out that the "Maryland statute of limitations [there] pertinent [Courts Art. § 5–101] requires that a civil action at law be commenced within three years from the date the claim accrues." 62 Md.App. at 236, 488 A.2d 1016. That is equally true of § 5–102, except that the time period is twelve years instead of three. He went on to observe that the commencement requirement was met by the filing of the suit. *Id.* Again, that requirement was met timely here.

Turning to the problem of nonservice of process within the statutory period, Judge Moylan explained that "[w]hile mere actual, as opposed to formal, notice [to] a potential defendant of a claim will not cure an improper or defective service of process, when that is the issue in the case ..., notice of a filed suit may nonetheless prevent a dismissal based upon the statute of limitations, a very different issue." 62 Md.App. at 237, 488 A.2d 1016 [citations omitted]. This is because

> service of process raises jurisdictional issues and focuses on the power of a court to exert its authority over a particular party[. Therefore,] it cannot be waived or ignored simply because the defendant had actual notice of the action.... The statute of limitations, on the other hand, is a "practical and pragmatic device" which protects a defendant from stale and untimely suits by forcing a plaintiff to file by a known deadline. Where a suit has been timely filed and the defendant is aware of its existence and basic substance, use of the statute to defeat the claim would be improper, with no purpose being served.

62 Md.App. at 237–38, 488 A.2d 1016 [citations omitted]. In other words, the statute of limitations does not "... extend

to situations where, in the words of Justice Holmes, '... a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specific conduct....'" (*New York C. & H.R.R. Co. v. Kinney*, 260 U.S. 340, 346, 43 S.Ct. 122, 123, 67 L.Ed. 294 (1922)). *Doughty v. Prettyman*, 219 Md. 83, 93, 148 A.2d 438 (1959). *See McSwain v. Tri-State Transportation Co., Inc.*, 301 Md. at 370, 483 A.2d 43 ("Transportation was neither prejudiced nor misled by the naming of Trucking rather than Transportation as the defendant" because Transportation's counsel had notice of the suit before limitations had run).

With these principles in mind, we turn to the case before us. As in *Reed* we are dealing with a limitations question. No issue is raised regarding defective service of process. As to factor (1), there can be no doubt that appellee intended to obtain *scire facias* against appellant. The recitals in the orders and writs make it clear that appellant was the owner of an interest in the Allegheny Avenue property, an interest to which the lien of the judgments had attached. Appellant was specifically named in those documents, and the manner in which she had acquired her interest was set forth. It is obvious that she was intended as a defendant, even though appellee sued her through her guardian and next friend rather than individually. The more difficult question has to do with factor (2)—notice to appellant that she was the intended defendant.

Judge DeWaters found as a fact that he was dealing with a case of misnomer—that appellee had intended at all times to sue appellant. It is a finding we cannot set aside unless it is clearly erroneous. Md.Rule 1086. The burden is on appellant to persuade us of the existence of clear error. Moreover, although Judge DeWaters made no express finding that appellant had notice of her intended status as defendant, his conclusion as to misnomer had to include an implicit finding to that effect. We think the record contains evidence to support such a finding.

As we have already seen, the writ of *scire facias* was posted on the subject property before limitations had run. Although the constructive notice so given might be insufficient in this case to provide personal jurisdiction over appellant (*see* Rule 2-122), notice for personal jurisdiction purposes is not the issue before us, as it was not in *Reed*. Rather, the issue is whether appellant had sufficient notice of the pending action before the running of limitations to satisfy the purpose of limitations—the protection of defendants from stale claims. Judge DeWaters might have concluded that the posting was sufficient to provide the requisite notice to appellant. He might also have concluded that appellant, who was seventeen years old when the proceedings were commenced, and who lived with her mother, was made fully aware of the matter by her mother, but the record is silent as to that. Nevertheless, we think there was another basis for deciding that appellant had notice of these proceedings.

When the original *sci. fa.* orders were issued, appellant's mother, E. June Smith, was appellant's guardian, having been so appointed by the Orphans' Court of Baltimore County on April 25, 1983.[3] Under certain circumstances notice to a fiduciary such as a guardian is sufficient notice to the ward, at least where there is no conflict between their respective positions. *See Matter of Easton*, 214 Md. 176, 189, 133 A.2d 441 (1957) (no notice need be given incompetent that trustee intended to sell property because trustee represents incompetent and acts under direction of the court). In the instant case the writs were served on appellant's court-appointed guardian.[4] We hold that the

---

**3.** In fact, suing by her mother as guardian, appellant, at about the time the judgments were assigned to appellee, filed a suit to sell the subject property in lieu of partition. That suit is pending in the Circuit Court for Baltimore County.

**4.** Service on an individual under disability ordinarily must be made on that individual as well as on a guardian, parent, or other person who has care or custody of the person under disability. Md.Rule 2-124(b) (former Md.Rule 119). But here, as in *Reed*, the issue before

notice so given was, for purpose of limitations, notice to appellant.

In short, on the record before us, we are not persuaded that Judge DeWaters's fact-finding was clearly erroneous. Thus, we affirm his determination as to misnomer, and hence, his conclusion that appellee's claim was not barred by limitations when appellant was correctly named as a defendant in June 1984.

### *Laches*

■ When appellant filed her laches defense, Md.Rule 2–301 was in effect. That rule provides:

There shall be one form of action known as "civil action."

Appellant argues that Rule 2–301, taken together with Rule 2–323(g) (answer "may include by separate defense any other matter constituting an avoidance or affirmative defense on legal or equitable grounds") has merged law and equity so that laches may be raised in defense of a purely legal (as opposed to equitable) claim. Judge DeWaters disagreed; so do we.

To put the issue in perspective, we turn first to a consideration of the pre-Rule 2–301 treatment of limitations and laches. The statute of limitations was a legal defense, available in actions at law. The defense could be successfully asserted at law upon a showing of no more than that the statutorily-prescribed period of time had passed before the plaintiff had tolled it, usually by filing an appropriate action. *Piersma v. Seitz*, 10 Md.App. 439, 440–441, 271 A.2d 199 (1970). Under some circumstances, limitations could also be raised in equity. In cases of concurrent jurisdiction at law and in equity, it was sometimes said that the statute of limitations was equally applicable on both sides of the court:

---

us is not in personam jurisdiction but limitations. We note, however, that when an individual under disability who is sued has a guardian, the guardian *"shall* defend the action." Md.Rule 2–202(c) [emphasis added]. *See* former Rule 205 e.

In such cases, Courts of equity do not act so much in analogy to the statute as in obedience to it. They apply the statute as it would have been applied at law.

*Dugan v. Gittings*, 3 Gill 138, 161 (1845). More recent statements of the rule, however, suggest that equity courts generally acted by analogy in applying limitations to claims before them. *Villarreal v. Glacken*, 63 Md.App. 114, 127–28, 492 A.2d 328 (1985). In any case, when equity applied limitations, it did so by virtue of the fact that the statutory period had elapsed; no further showing was necessary. *Id.*

Under the doctrine of laches, however, "in a purely equitable action a lapse of time shorter than the period of limitations [could] be sufficient" to bar the suit. *Akin v. Evans*, 221 Md. 125, 132, 156 A.2d 219 (1959). But more than the passage of time had to be demonstrated; the party relying on laches was required to demonstrate both delay or lack of diligence on the part of the claimant and prejudice to the defendant because of that delay. *Akin*, 221 Md. at 133, 156 A.2d 219.

In the case before us, we have held that appellee's claim is not barred by limitations. Can appellant now invoke laches and apply a lesser lapse of time to defeat that claim? Prior to July 1, 1984, (the effective date of Md.Rule 1–301) the answer would have been an unequivocal "no". *Scire facias* proceedings like those before us were actions at law and "[t]he doctrine [of laches], of course, has no application in a proceeding of law...." *McHugh v. Martin*, 198 Md. 173, 180, 81 A.2d 623 (1951). Has all this been changed by the adoption of the current Maryland rules?

We hold that neither Md.Rule 2–301, nor Md.Rule 2–323(g), nor any combination of them makes the doctrine of laches available as a defense to a purely legal claim. The Rules Committee note to Rule 2–301 explains that "[t]he effect of this Rule is to eliminate distinctions between law and equity for purposes of pleadings, parties, court sittings, and dockets." Those purposes do not extend to the elimination of distinctions between what defenses may be available

to a legal claim as opposed to an equitable claim. The "merger" of law and equity was not intended to abolish all differences between legal and equitable claims and defenses to them, but only to abolish "[p]leading distinctions between law and equity" and "to assure that [a]ll claims and defenses are determined in one court." P. Niemeyer and L. Richards, *Maryland Rules Commentary* 124 (Michie Co. 1984). "It is doubtful that the unification of law and equity brought about by the Revised Rules eliminates all distinctions, other than trial by jury, between legal and equitable action...." Cross and Lynch, "Maryland's revised pleading rules: attention to old requirements necessary," *Daily Record*, January 23, 1984, p. 4.

 As the last quotation suggests, one may analogize to the right to jury trial. That the right to jury trial is not available in an equitable claim, even though joined with one or more legal claims, is clear. The Rules Committee note to Rule 2–301 points out that the rule "does not affect the right to jury trial." Instead, a court must look to the historical nature of the claim (whether it is legal or equitable) to determine the right to jury trial. *Maryland Rules Commentary* at 125. So it is with laches. If a claim by its historical nature is equitable, laches may bar it if the factual predicate is met. If a claim by its historical nature is legal, the defense of laches is not available. This is the situation presented by the case before us.

To dissuade us from this conclusion, appellant cites three cases. They are not persuasive. *Universal Coin Lock Co. v. American Sanitary Lock Co.*, 104 F.2d 781 (7th Cir.1939) was a patent infringement case, decided shortly after the 1938 federal merger of law and equity. The court applied the doctrine of laches without discussion or explanation of the reasons for doing so. *Briggs v. Wix Corp.*, 308 F.Supp. 162 (N.D.Ill.1969) was another patent case in which the court applied laches on the authority of *Universal Coin.* Much of the discussion, however, related to the doctrine of abandonment of a patent, and that doctrine may well have

been the basis for the decision. Moreover, certain equitable doctrines are traditionally available in patent cases. *See, e.g., Hardinge Co., Inc. v. Jones & Laughlin Steel Corp.,* 164 F.Supp. 75 (W.D.Pa.1958). Finally, in *Harris v. Beynon,* 570 F.Supp. 690 (N.D.Ill.E.D.1983), a federal civil rights case under § 42 U.S.C. § 1983, the court cited *Briggs* for the proposition that under the federal rules, laches is an appropriate defense to legal as well as to equitable claims.

Other federal cases have taken a contrary and, we think, a better-reasoned position. In *Nilsen v. City of Moss Point,* 674 F.2d 379 (5th Cir.1982), like *Harris,* a § 1983 case, the Fifth Circuit addressed a situation in which mixed claims—legal and equitable—were presented. It held that the statute of limitations was applicable to the legal claims and laches only to the equitable ones. 674 F.2d at 388. To the same effect are decisions such as *Gruca v. United States Steel Corp.,* 495 F.2d 1252, 1256 (3rd Cir.1974), *Sandobal v. Armour and Co.,* 429 F.2d 249 (8th Cir.1970), and *Stewart v. Wappingers Central School District,* 437 F.Supp. 250, 255 (S.D.N.Y.1977). *See also Jefferson National Bank v. Central National Bank in Chicago,* 700 F.2d 1143 (7th Cir.1983) (applying Illinois law).[5]

In addition to federal cases supporting our holding, there are a number of state decisions of like purport. For example, in *Strickland v. Cousens Realty, Inc.,* 484 A.2d 1006, 1008 (Me.1984), the Supreme Judicial Court explained:

> The merger of law and equity by M.R.Civ.P. 2 ... did nothing to expand the historical reasons for the principle that a court of equity will not give equitable relief to a suitor who has failed to pursue his claim with a degree of diligence reasonable in the circumstances.... Laches is not available in a suit for money damages.

---

**5.** In *Oneida County, N.Y. v. Oneida Indian,* — U.S. —, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985), the Supreme Court declined to address the issue of laches as a defense to a legal claim. It did note, however, "that the equitable defense of laches in an action at law would be novel indeed." 105 S.Ct. at 1257, n. 16.

Similarly, in *Laurie v. Thomas*, 294 S.E.2d 78, 80–81 (W.Va. 1982), the Supreme Court of West Virginia observed:

> The fact that Rule 2 of our Rules of Civil Procedure states that "all procedural distinctions between actions, suits and other judicial proceedings at law or in equity are abolished" does not mean the distinction between our various statutes of limitations and the equitable doctrine of laches are also abolished.

*See also, e.g., Smith v. Smith*, 168 Ohio St. 447, 156 N.E.2d 113 (1959), *State v. Bean*, 159 Me. 455, 195 A.2d 68 (1983), and *Adler v. Los Angeles Unified School District*, 98 Cal.App.3d 280, 159 Cal.Rptr. 528, 533 (1979).

We think these cases espouse the better view. Even under "merged" procedures, the doctrine of laches may not be applied to bar a legal claim that is timely under the applicable statute of limitations. A contrary holding would permit laches to be raised in contract, tort, or other purely legal actions. We cannot conclude that the Court of Appeals, in adopting Rule 2–301, so intended, thereby emasculating the legislatively-prescribed statutes of limitations applicable to such cases.

Appellant also contends that historically in Maryland, the doctrine of laches could be asserted in an action at law; therefore, its assertion should be permitted to bar the legal claim in the present case. The argument runs thus: Under former Md.Rule 342 d.1., "[a] party to any action at law in which he, if judgment were obtained, would be entitled to relief against such judgment on equitable grounds, [could] plead the facts which entitle[d] him to such relief by way of defense." That provision has, in effect, been carried forward by the first sentence of the last paragraph of present Md.Rule 2–323(g): "In addition, a party may include by separate defense any other matter constituting an avoidance or affirmative defense on legal or equitable grounds." Thus, even prior to the "merger" of law and equity, laches could be raised as an equitable defense to an action at law; the new rules retain this practice.

For the reasons we have already stated, we do not believe the new rules contemplate any change in the principle that laches applies only to equitable claims. Rule 2–323(g) does no more than to permit a party to include all defenses in a single answer, some of which defenses might be applicable only to legal claims presented by the opposing party, and others only to equitable claims. Nor do we believe that former Rule 342 d.1., even if carried forward by the Rule 2–323(g) language we have quoted, permitted what appellant says it did.

Rule 342 d.1. had its origins in Ch. 547, Laws of 1888. 1 J. Poe, *Pleading and Practice at Law* § 667A (Tiffany Ed.1925). The purpose was to avoid circuity of action in a system in which law and equity courts were distinctly separate, 1 *Pleading and Practice at Law* § 143A. Thus, in circumstances in which affirmative equitable relief was involved (*e.g.*, recission of a contract), a plea on equitable grounds could be filed. If supported by evidence, the law court, while it could not actually grant the equitable relief, could simply hold the contract unenforceable and deny relief to the plaintiff. *Creamer v. Helferstay*, 294 Md. 107, 114–116, 448 A.2d 332 (1982). But not all subjects of affirmative equitable relief were available as equitable defenses at law under Rule 342 d.1. *Annapolis Mall v. Yogurt Tree*, 299 Md. 244, 253–55, 473 A.2d 32 (1984) (equitable claim for reformation of contract not available under Rule 342 d.1.). And in any event, the defense of laches, while it may be an affirmative *defense* (Md.Rule 2–323(f)(11)) is not a claim for affirmative *relief*. Like limitations, it is purely defensive.

Appellant has cited and we have found no Maryland case allowing the assertion of laches under Rule 342 d.1. or its predecessor statutes. We hold that it was not so available and that Rule 2–323(g) does not permit it to be raised as a defense to a purely legal claim. Judge DeWaters did not err in holding that the doctrine of laches was unavailable to appellant.

JUDGMENT AFFIRMED.

APPELLANT TO PAY THE COSTS.