**M. LOWENSTEIN & SONS, INC., Plaintiff,**

v.

**Martin AUSTIN, Defendant.**

**No. 73 Civ. 5268.**

United States District Court, S. D. New York.

Jan. 20, 1977.

Sidney Sherwin, Kew Gardens, N. Y., for plaintiff.

Colton, Weissberg, Hartnick & Yamin, New York City, for defendant by Edward T. Burns, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

This is a suit on a personal guarantee. Plaintiff, M. Lowenstein & Sons, Inc., is a New York corporation with its principal place of business in New York. Defendant is a citizen of Georgia. The amount in controversy exceeds the minimum required for diversity jurisdiction. A trial has been held and this opinion constitutes findings of fact and conclusions of law.

## I. PERSONAL JURISDICTION

■ Defendant has raised in his answer, but not by pretrial motion, the issue of whether there is a basis for jurisdiction over his person and whether the service of process was proper. Plaintiff's threshold argument is that these defenses have been waived by failing to make a pretrial motion. Rule 12(b), Fed.R.Civ.P., indicates that each of these defenses may be raised by motion. However, Rule 12(h)(1), which governs waiver of these defenses, indicates that they are preserved as long as they are contained in the responsive pleading or raised in the first prepleading motion. Since the defenses are contained in defendant's answer, they are not waived. See 2A Moore's Federal Practice ¶ 12.23.

■ In order for there to be jurisdiction over the person of the defendant there must be both a valid basis for jurisdiction and a proper manner of service. The personal guarantee which I find the defendant did execute and which is the basis of this action, provides as follows:

"It is agreed that this guarantee constitutes a business transaction entered into between the parties in the State of New York and shall be construed pursuant to the laws of the State of New York. The undersigned hereby consent to and confer personal jurisdiction over the undersigned by the Courts of the State of New York for any action to enforce this guarantee, by personal service of process upon the undersigned either within or without the State of New York . . . ."

It is settled law that a contractual consent to personal jurisdiction in New York such as this one will be given full force and effect. *See National Equipment Rental, Ltd., v. Szukhent*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964); *National Equipment Rental, Ltd., v. Reagin*, 338 F.2d 759 (1964). *See also* J. McLaughlin, Commentaries on the CPLR, 301:5 (McKinney's 1972). Having found a basis for personal jurisdiction, the next issue is whether the phrase "by the Courts of the State of New York" contained in the previously quoted consent clause ousts this court of jurisdiction over the person. I find, as has Judge Knapp in similar circumstances, that the clause taken as a whole was intended to be a consent to jurisdiction in New York and not a limitation on the forum in which an action might be brought. *Wiesenberger Service v. Response Analysis Corp.*, 365 F.Supp. 258 (S.D.N.Y.1973).

■ The manner in which service was made must next be examined. The proof indicates that the summons and complaint were served by a United States Marshall on the defendant's 21 year old daughter at the undisputed residence of the defendant in Myrtle Beach, South Carolina. Rule 4(d)(1), Fed.R.Civ.P., provides that service may be made:

"Upon an individual other than an infant or an incompetent person, by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein . . . ."

Defendant argues that his daughter, who was visiting home from school in Memphis, Tennessee, was not a person "then residing" at his residence. Rule 4(d)(1) is broad enough to include a student returning home from college to stay at least overnight at her parents' residence. Thus, I conclude that jurisdiction was obtained over Martin Austin.

## II. THE MERITS

Austin Lee Corp. was a manufacturer of finished textile products. M. Lowenstein &

Sons is a textile piece goods manufacturer and a former supplier of Austin Lee's. In June 1968, while president of Austin Lee, Martin Austin executed a personal guarantee in favor of the plaintiff. Sometime in late 1968, Martin Austin sold his stock in Austin Lee Corp. to National Factors, Incorporated and severed his connection with Austin Lee. The defendant testified that at the time he sold the business he instructed his attorney George B. Culpepper, Jr. to remove him from all guarantees.

The guarantee by its terms is cancellable by giving proper notice to plaintiff:

"2. The guarantee shall be a continuing one and shall remain in full force and effect until such time as written notice, cancelling same shall be sent by us (me) to the creditor by registered mail and received by the creditor at its offices and in the event of such cancellation, we (I) shall be and remain liable for all goods theretofore shipped or billed by the creditor and for all goods theretofore ordered by the customer . . . ."

Frank Perrotta, the plaintiff's credit manager, indicated that he was aware of Austin's sale of his interest in Austin Lee but never received a cancellation of the guarantee.

On January 14, 1971, Perrotta wrote to Martin Austin seeking to recover on the guarantee. According to the proof at trial, Austin Lee Corp. owed M. Lowenstein approximately $82,000.*

In response to Perrotta's letter, Austin contacted George Culpepper, who confirmed to him that he had no liability with regard to any of Austin Lee's transactions. Culpepper wrote to Perrotta on January 25, 1971, as in part follows:

"At the time Mr. Austin severed his connection with Austin Lee Corporation, all indebtedness was assumed by the Corporation; and he was relieved from any liability in connection with Austin Lee Corporation. I would suggest that you take this matter up with Mr. John Tarle-

ton, Attorney at Law, Decatur, Georgia who represents Austin Lee Corporation and National Factors, Incorporated."

There was no immediate response from plaintiff but there is evidence that at some later point Austin was contacted by representatives of plaintiff seeking collection. Approximately six months after the January 1971 exchange, George Culpepper died. The defendant testified that since Culpepper's death he has caused a search to be made of the attorney's files to uncover a cancellation of the guarantee. None has been found. At trial the defendant did not have a firm recollection of ever sending such a cancellation. I find that none was ever sent.

Plaintiff did not commence this action until December 12, 1973, nearly three years after the January 14, 1971 demand. Defendant contends that because of the delay in bringing this action, coupled with the prejudice to him resulting from Culpepper's death, this action should be barred under the doctrine of laches.

■ The answer short and simple is that laches is a defense only to actions in equity, and is not a defense to an action at law. See Fuchs & Lang, v. Schenectady Chemicals, 43 A.D.2d 881, 351 N.Y.S.2d 754 (3d Dep't 1974); Chase Manhattan Bank v. Levy, 157 N.Y.S.2d 464, 467 (Sup.Ct. N.Y. County 1956); Lomascolo v. Lomascolo, 80 Misc.2d 489, 363 N.Y.S.2d 262 (N.Y.Civ.Ct. 1975). The relevant statute of limitations provides the only barrier to stale actions at law. Reviewing the complaint, it is apparent that this is an action for breach of contract and that no equitable relief is sought. Accordingly, this defense is not available to defendant.

■ Defendant's remaining contention that the guarantee should be limited to Austin Lee's Fort Valley, Georgia plant because the guarantee erroneously gives Fort Valley as the address of the headquarters of the corporation is without merit. It is

---

* The invoices submitted by plaintiff indicate that the $82,000 indebtedness arose from charges which became due no earlier than February 1970, a date after Austin had left the corpora-

tion. However, there is also proof that at the time Austin did leave the corporation, there was a substantial sum of money owed to M. Lowenstein & Sons.

clear that the contract is a guarantee of the obligations of the corporation.

Settle judgment for plaintiff on notice.

**FORREST R. B. ENTERPRISES, INC., Plaintiff,**

v.

**CAPRICORN RECORDS, INC., Defendant.**

No. 76 Civ. 4234 (KTD).

United States District Court, S. D. New York.

Feb. 2, 1977.

Arrow, Silverman & Parcher, P. C., New York City, for plaintiff by Peter A. Herbert, New York City.

Mayer, Nussbaum & Katz, P. C., New York City, for defendant by Theodore Nussbaum, New York City.

MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiff, the corporate employer of Forrest Richard Betts (Betts), a singer and guitarist formerly associated with the "rock group" known as the Allman Brothers Band (the "Band"), has moved for summary judgment and dismissal of the counterclaims in this action for a declaratory judgment freeing Betts as a solo recording artist from any contractual obligation to defendant Capricorn Records, Inc. (Capricorn), for whom, it is undisputed, the Band was exclusively obligated to record. The counterclaims sought to be dismissed allege, as against plaintiff and one Steven Massarsky, Betts' business manager, tortious interference with the contract in question, and, as against plaintiff, Betts and Massarsky, tortious interference with the execution of, and refusal by Betts to so execute, a new management agreement with Phil Walden and Associates, who purportedly had been acting as Betts' personal manager since July, 1969.

It is uncontroverted that in November, 1972, the Band and its members entered into a recording contract with defendant, and that in June, 1976 the Band ceased to function as a group. Thereafter, Betts notified defendant that since he was no longer a member of the Band, he desired to per-

form as a solo recording artist for another company of his choice. The instant suit followed.

The sole question presented by this motion is whether, under the terms of the recording agreement, Betts is obligated individually to perform exclusive recording services for defendant as a solo artist, despite the Band's dissolution as a recording group. The pertinent contractual provisions provide:

AGREEMENT made this 1st day of November 1972 by and between CAPRICORN RECORDS, INC. and/or its associates, subsidiaries, nominees, successors and assigns (hereinafter called "Company") and GREGORY LENOIR ALLMAN, CLAUDE HUDSON TRUCKS, JR., RAYOND BERRY OAKLEY III, JOHNNY LEE JOHNSON, FORREST RICHARD BETTS, professionally known as the ALLMAN BROTHERS BAND, (hereinafter referred to as "Artist").

/ jointly and severally *

1. The Artist hereby grants and Company engages the Artist's exclusive personal services in connection with the production of phonographic records. If this agreement, is with more than one individual, this agreement shall be binding upon each individual who is a signatory hereto as an Artist, jointly and severally.

### Rider .

\* \* \* \* \* \*

* This phrase was typewritten into the contract, unlike the second reference to "jointly and severally" which appeared in printed "boilerplate" type, a fact to which defendant attributes great weight in construing the meaning of the phrase. It is unclear to me, however, whether this typewritten phrase (uninitialled by the parties, in contrast to other changes in the "boilerplate" language of the contract as a whole) refers to the preamble, so as to read "(hereinafter referred to jointly and severally as "Artist")," or to paragraph 1, so as to read "The Artist jointly and severally hereby grants . . . ". Both parties appear to have accepted the phrase as properly part of paragraph 1 and it shall be so treated for the purposes of this motion.