Agnes E. NILSEN, Plaintiff-Appellant,

v.

The CITY OF MOSS POINT, MISSISSIPPI, Defendant-Appellee.

No. 81–4055.

United States Court of Appeals,
Fifth Circuit.

April 26, 1982.

Opinion on Rehearing and Rehearing
En Banc Aug. 2, 1982.

Phillip J. Brookins, Jackson, Miss., for plaintiff-appellant.

Dalton McBee, Jr., M. Curtiss McKee, Jackson, Miss., for defendant-appellee.

Before WISDOM, SAM D. JOHNSON and WILLIAMS, Circuit Judges.

WISDOM, Circuit Judge:

In this her fourth trip to federal court and her second appearance before this court, the plaintiff-appellant, Agnes Nilsen, seeks once more an opportunity to demonstrate the merit of her charge that the defendant-appellee, the City of Moss Point, Mississippi, discriminated against her unlawfully. Her first three suits, filed under Title VII, 42 U.S.C. § 2000e, were dismissed for various deficiencies, before Nilsen presented any evidence of discrimination. Now, Nilsen brings a fourth suit, attempting to establish liability under the fourteenth amendment and the Civil Rights Act of 1871, 42 U.S.C. § 1983. Although the litigation raises complex and troubling issues concerning the preclusive effect of prior actions, we are persuaded that, in the special circumstances of this case, the plaintiff must at last have her day in court, where she will be put to her proof on both the timeliness and the merit of her allegations.

I.

Nilsen applied for a position as a firefighter with the Fire Department of the City of Moss Point in July 1974. When her application was rejected, she filed a charge of sex discrimination against the city with the Equal Employment Opportunity Commission in August 1974. Conciliation efforts failed, and Nilsen received a right-to-sue letter on June 5, 1975. In July 1975, she filed suit (*Nilsen I*) in the United States District Court for the Southern District of Mississippi against the Chief of the Moss Point Fire Department and the Chairman of the Moss Point Civil Service Commission. That suit was dismissed because the defendants were not employers and were not named in the EEOC charge. The trial court specified that the dismissal "was

without prejudice to the plaintiff to sue the proper party".[1]

On January 13, 1976, Nilsen filed a suit (*Nilsen II*) against the city, certain individuals, and certain departments of city government. That complaint alleged substantially the same facts as did the complaint in *Nilsen I*. On July 21, 1976, Nilsen filed her third suit (*Nilsen III*) against the city, the Fire Department, the Civil Service Commission, and the Mayor. It arose from a second EEOC charge that Nilsen filed on November 15, 1975, alleging continuing discrimination. On that charge, Nilsen received a right-to-sue letter on March 23, 1976. *Nilsen II* and *Nilsen III* were consolidated for consideration of the defendants' motion for summary judgment. That motion was based on the theory that Nilsen brought *Nilsen II* more than ninety days after the issuance of her right-to-sue letter and brought the EEOC charges leading to *Nilsen III* more than 180 days after she became aware of the facts supporting her charge. Title VII requires the timely invocation of EEOC conciliation procedures and of the judicial process: a Title VII plaintiff must file charges with the EEOC within 180 days of learning of his claim, 42 U.S.C. § 2000e–5(e), and, if conciliation efforts fail, and the EEOC, instead of bringing suit, issues a right-to-sue letter, the plaintiff must file suit within ninety days of receipt of that letter, *id.*, § 2000e–5(f)(1). After settlement efforts by the parties here failed, the court scheduled a hearing on the motion for summary judgment on June 9, 1977. On June 15, 1977, before decision on the motion for summary judgment, Nilsen moved to amend her complaint to include a claim for relief under 42 U.S.C. § 1983, based on the same alleged discrimination. Not until November 28, 1978, did the magistrate file his recommendations in the consolidated cases, and on February 12, 1979, the court adopted those recommendations. The district court denied Nilsen's motion to amend and granted the defendants' motion for summary judgment on the original complaint, reasoning that the plaintiff had failed to meet the timely filing requirements of Title VII.[2] Nilsen took an appeal, and a panel of this court affirmed both the denial of leave to amend and the grant of summary judgment. *Nilsen v. City of Moss Point*, 5 Cir. 1980, 621 F.2d 117.

Nilsen, undaunted, filed yet another suit (*Nilsen IV*) on August 29, 1980, against Moss Point, seeking to assert the constitutional claims that were the subject of her proposed amendments in *Nilsen II/III*. The city moved for summary judgment, and the district court granted the motion on two grounds. First, the court held that the judgment in *Nilsen II/III* barred *Nilsen IV* under the doctrine of res judicata. Second, as an alternative ground, the court held that the denial of leave to amend in *Nilsen II/III* entailed determinations of delay and prejudice tantamount to a finding of laches. Since Nilsen was collaterally estopped to relitigate those questions, the court reasoned, her § 1983 claim was, as a matter of law, barred by laches.

On this appeal, Nilsen urges that *Nilsen IV* is not res judicata for two reasons. First, she contends, the summary judgment in *Nilsen II/III* was premised on the failure to meet "jurisdictional" timely filing requirements, and a judgment that a court lacks subject matter jurisdiction is not res judicata as to the merits of the claim. Second, Nilsen argues, Title VII and § 1983 are not the "same cause of action", so a judgment in a Title VII suit, even if on the merits, would not bar a subsequent § 1983 suit on the same facts.

Next, Nilsen attacks the alternative ground for the result in the district court. Again, she presents several arguments, any one of which, if meritorious, would undermine this ground for the district court's holding. First, she asserts that her complaint requests both legal and equitable relief, so, instead of laches, the statute of

---

**1.** Further proceedings in *Nilsen I*, not relevant here, are described in *Nilsen v. City of Moss Point*, 5 Cir. 1980, 621 F.2d 117, 119.

**2.** Again, further proceedings not relevant here are described in *Nilsen v. City of Moss Point*, 5 Cir. 1980, 621 F.2d 117, 119.

limitations governs—here, the Mississippi catch-all limitations provision, granting a six-year period. Second, even if laches does govern, she contends that the *Nilsen II/III* court did not find prejudice, a necessary condition for laches. Finally, she argues that the degree of delay and prejudice that justifies a denial of leave to amend under rule 15(a), Fed.R.Civ.P., does not equal the degree necessary to support a finding of laches.

Even more complex than the procedural history of this litigation are the issues now presented to us for decision. Fortunately, our disposition of the case permits us to pretermit some of the vexing problems raised. The resolution of the remainder, however, is inescapable, and our resolution requires us to reverse the judgment of the district court.

## II.

■ Res judicata will bar an action if there has been a prior judgment on the merits on the same cause of action in a suit between the same parties. *See generally Kemp v. Birmingham News*, 5 Cir. 1979, 606 F.2d 1049, 1052. The trial judge here concluded that the judgment in *Nilsen II/III* was "based upon a statute of limitations" and therefore was a decision on the merits. Further, he concluded that Nilsen's Title VII claim and her § 1983 claim, which concededly arise out of a single occurrence, are the same cause of action.

■ A dismissal for lack of subject matter jurisdiction is not a bar to a later action brought in a court of competent jurisdiction on the same claim. *See* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1350 (1969). At the same time, a dismissal based upon the statute of limitations will bar claims that, although themselves still timely, are part of the same cause of action as the previously asserted time-barred claim. *See Mervin v. FTC*, D.C.Cir.1978, 591 F.2d 821 (per curiam); *Cemer v. Marathon Oil Co.*, 6 Cir. 1978, 583 F.2d 830 (per curiam). The question confronting the trial judge, then, was which of these rules governs the dismissal of a Title VII claim for failure to meet the timely filing requirements. The plaintiff argues that these requirements are jurisdictional in the res judicata sense and that, even if under current law they are not jurisdictional, the courts in *Nilsen II/III* characterized their decision as a dismissal for lack of jurisdiction, and that characterization is the law of the case.

■ The court in *Nilsen II/III* stated that the unfulfilled requirements were "jurisdictional", and this court used the same language in affirming. *Nilsen II/III*, 621 F.2d at 121. But the term "jurisdictional" does not carry the same meaning in every context in which it is employed. Thus, for instance, flaws that would not leave a judgment vulnerable to collateral attack may nonetheless be considered jurisdictional for res judicata purposes. *Costello v. United States*, 1961, 365 U.S. 265, 285, 81 S.Ct. 534, 544, 5 L.Ed.2d 551; *see generally* 9 C. Wright & A. Miller, Federal Practice and Procedure § 2373 (1971).[3] Since "jurisdictional" does not carry a single unvarying meaning, we reject the plaintiff's argument that the characterization of the requirement adopted in *Nilsen II/III* is the law of the case. The court there was not considering jurisdiction in the res judicata sense. On the contrary, the court was considering only whether it could continue to entertain the action. *See Reeb v. Economic Opportunity Atlanta, Inc.*, 5 Cir. 1975, 516 F.2d 924, 927. The *Nilsen II/III* court's discussion of the possibility of equitable tolling, 621 F.2d at 120–21, shows that its view was that the requirements are not jurisdictional in every sense of the word.

3. In *Costello*, the Supreme Court considered the res judicata effect of a judgment based on the failure of the government to file a statutorily required affidavit of good cause. Rule 41(b), Fed.R.Civ.P., which governs the effect of dismissals, provides that a judgment of no jurisdiction is an exception to the general rule that a dismissal operates as an adjudication on the merits. Although prior cases had held that the failure to file the required affidavit was not a jurisdictional flaw in the sense of rendering the judgment vulnerable to collateral attack, the Court held that the requirement was jurisdictional for purposes of rule 41(b).

The Title VII requirements and the parallel requirement in the Age Discrimination in Employment Act, 29 U.S.C. § 626(d)(1), have sparked a great deal of litigation seeking to clarify in which senses they are jurisdictional,[4] leading the Supreme Court to grant certiorari to decide the question. After the district court's decision in this case, the Court held in *Zipes v. Trans World Airlines, Inc.*, 1982, —— U.S. ——, 102 S.Ct. 1127, 71 L.Ed.2d 234, that the requirement of filing with the EEOC is subject to waiver, estoppel, and equitable tolling. Of course, as we have noted, "jurisdictional" need not have the same meaning in every context, so the characterization of the time-ly filing requirements for purposes of waiver, estoppel, and equitable tolling does not necessarily govern the characterization of these requirements for purposes of determining the res judicata effect of a judgment. We have found no authority on that precise point, and the parties have cited us none.[5] Much of the reasoning of the *Zipes* opinion, though, applies not only to the question whether the requirement is jurisdictional for the purposes of waiver, estoppel, and equitable tolling but also to the question whether it is jurisdictional for the purpose of res judicata. *See id.* —— U.S. at ——, 102 S.Ct. at 1130. We are convinced, however, for other reasons, that res judica-

4. We have recently decided that the ADEA requirement is subject to equitable tolling. *Coke v. General Adjustment Bureau, Inc.*, 5 Cir. 1981, 640 F.2d 584 (en banc). And this circuit and several others have held that the Title VII requirement is also subject to equitable tolling. *See, e.g., Cooper v. Bell*, 9 Cir. 1980, 628 F.2d 1208, 1213 (§ 2000e–16); *Chappell v. Emco Machine Works Co.*, 5 Cir. 1979, 601 F.2d 1295, 1301–02; *Leake v. University of Cincinnati*, 6 Cir. 1979, 605 F.2d 255, 259; *Hart v. J. T. Baker Chemical Corp.*, 3 Cir. 1979, 598 F.2d 829, 833; *Reeb v. Economic Opportunity Atlanta, Inc.*, 5 Cir. 1975, 516 F.2d 924. *See generally* Comment, 55 Notre Dame Law. 614, 616–21 (1980).

5. *Cemer v. Marathon Oil Co.*, 6 Cir. 1978, 583 F.2d 830, cited by the appellee, is not on point. There, the Sixth Circuit held a breach of contract claim barred by a prior dismissal of an age discrimination action on the ground that the statute of limitations had run. *Cemer* presented a different problem because the court in *Cemer I* had dismissed under rule 12(b)(6), Fed.R.Civ.P., reasoning that the statute of limitations had run, rather than under rule 12(b)(1) for lack of subject matter jurisdiction. The Sixth Circuit refused to reconsider the characterization of the grounds for dismissal. It faced a case in which the court in the earlier action had held its dismissal not to be on jurisdictional grounds. Its decision then cannot serve as authority for the proposition that the ADEA timely filing requirements are not jurisdictional for purposes of determining the res judicata effect of a judgment. We, on the other hand, face a case in which the court in the earlier action simply did not consider whether the dismissal was based on jurisdictional grounds in the res judicata sense. Indeed, *Cemer II* tends to support the plaintiff: if we thought that the *Nilsen II/III* court had considered the question of characterization, *Cemer II* would indicate that we could not re-examine it.

The most instructive case is *Truvillion v. King's Daughters Hosp.*, 5 Cir. 1980, 614 F.2d 520. There, the EEOC had filed a suit on the basis of the plaintiff's charge but had failed to comply with the requirement that it make a good faith investigation or with the regulatory requirement that it give notice to the employer, and, as a result, the first suit was dismissed. The EEOC then issued a right-to-sue letter to the plaintiff, who filed her own suit. The defendant argued that the plaintiff was barred by the judgment in the first action, where she could have intervened. We held that the unfulfilled requirements in the first action were jurisdictional in the res judicata sense, in that they were merely conditions to reaching the merits, and the plaintiff therefore was not barred.

Although *Truvillion* offers some support for Nilsen's contention that the timely filing requirements are conditions to reaching the merits and thus that failure to fulfill them will not bar a subsequent action, we hesitate to extend *Truvillion* to this case. In *Truvillion*, we reasoned that the EEOC was not barred by res judicata because it could give the necessary notice, undertake the required good faith investigation, and start over. *Id.* at 525. Similarly, in *Costello v. United States*, 1961, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551, which established the rule that a judgment based on failure to meet some condition to reaching the merits does not preclude a later action, the unfulfilled requirement that an affidavit of good cause be filed was one that could be fulfilled prior to the institution of a second action. In Nilsen's case, on the other hand, it is impossible to fulfill the timely filing requirements now; her Title VII claim can never be resurrected *as a Title VII claim.* Since the timely filing requirements in this sense have the operative effect of a statute of limitations, we might be justified in treating them as a statute of limitations.

ta does not bar Nilsen's action, so we need not finally resolve this question.[6]

Res judicata and the related doctrine of collateral estoppel further the salutary goals of judicial economy, avoidance of inconsistent judgments, and repose. The doctrine necessarily operates harshly, for it precludes assertion of potentially meritorious claims without any consideration of their merit. Yet that harshness is not without limits. The rules for the application of res judicata are targeted at litigants who are "at fault" either in the sense of having failed to persuade a tribunal of the merit of

**6.** This disposition permits us to avoid a question not raised by either party: whether the ninety-day requirement and the 180-day requirement must be treated in the same way. *See* B. Schlei & P. Grossman, Employment Discrimination Law 870 n.10 (1976).

Our decision, although resting on the rationale of the rule against splitting causes of action, permits us to avoid also the precise question whether Title VII and § 1983 employment discrimination suits are the same cause of action. We note that the Sixth Circuit has held the two legal theories to constitute a single cause of action when they are based on the same discriminatory incidents. *Harrington v. Vandalia-Butler Bd. of Educ.*, 6 Cir. 1981, 649 F.2d 434; *cf. Sinicropi v. Nassau County*, 2 Cir., 601 F.2d 60 (factors barring Title VII claim also bar § 1983 claim), *cert. denied*, 1979, 444 U.S. 983, 100 S.Ct. 488, 62 L.Ed.2d 411. The policies of repose and judicial economy, which have led to the definition of a cause of action as the claims arising out of a single transaction, *see* Restatement (Second) of Judgments § 61 (Tent. Draft No. 5, 1978), support the view taken by the Sixth Circuit. A plaintiff should not, as a general rule, be able to relitigate facts simply by presenting a new legal theory. *See, e.g., Cemer v. Marathon Oil Co.*, 6 Cir. 1978, 583 F.2d 830; Restatement (Second) of Judgments § 61.1(a) (Tent. Draft No. 5, 1978); *Developments in the Law—Res Judicata*, 65 Harv.L.Rev. 818, 826 (1952).

At the same time, however, the Supreme Court has emphasized the independence of Title VII and other remedies. *Johnson v. Railway Express Agency*, 1975, 421 U.S. 454, 459, 466, 95 S.Ct. 1716, 1719, 1723, 44 L.Ed.2d 295; *Alexander v. Gardner-Denver Co.*, 1974, 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147. *Alexander v. Gardner-Denver Co.* held that an adverse decision on a contract claim submitted to arbitration did not bar a Title VII action arising out of the same occurrence. The special nature of arbitration renders the case factually inapposite perhaps, because the question there was one of election: the plaintiff could not raise his Title VII rights in the arbitration proceeding, so an adverse decision would have forced him to choose among his remedies. Litigation of Title VII and § 1983 claims does not present the same forced choice; both theories can be pursued in one proceeding. Also, the claims asserted in the arbitration proceeding differ from a Title VII claim more than would a § 1983 claim, for the con-

tract claim is governed by the contract and not by public law. *Cf. Tipler v. E. I. duPont de-Nemours and Co.*, 6 Cir. 1971, 443 F.2d 125 (prior litigation of an unfair labor practice charge before National Labor Relations Board does not bar Title VII claim because NLRB deals only with discrimination that interferes with the right to organize). *See also* Note, *Res Judicata in Successive Employment Discrimination Suits*, 1980 U.Ill.L.F. 1049, 1094–95. Still, we cannot ignore the strong language stating that the Title VII remedy is independent and in addition to other remedies.

Nor does *Johnson v. Railway Express Agency* address precisely the identity of Title VII and § 1983 for res judicata purposes. It does, however, confront a closely related question: whether timely filing of a Title VII claim tolls the limitations period under § 1981. The Court held that it does not; there was not "complete identity" in the causes of action, and thus the defendant does not have the notice necessary to give him an adequate opportunity to preserve evidence and to justify denying him repose. 421 U.S. at 467 n.14, 95 S.Ct. at 1723 n.14. Again, the court described the Title VII claim as "separate, distinct, and independent" from the constitutional claim. 421 U.S. at 461, 95 S.Ct. at 1720. But it is worth noting that the result of the case was to deny a § 1981 remedy to a plaintiff who had slept on his § 1981 rights when there had been nothing to prevent him from asserting them while pursuing Title VII remedies. For a cynical (and perhaps justifiably so) explanation of these holdings, see Note, *Res Judicata in Successive Employment Discrimination Suits*, 1980 U.Ill.L.F. 1049, 1093 n.254.

It is difficult to reconcile the language of the Supreme Court in *Johnson v. Railway Express Agency* and *Alexander v. Gardner-Denver Co.* with the principles of res judicata. Even if collateral estoppel is available to prevent relitigation of prior determinations, that backstop is not ordinarily thought sufficient to vindicate the concerns underlying res judicata. As counsel for the plaintiff frankly conceded at argument, without these cases, it would be difficult to conceive of the two theories as independent causes of action. *See* B. Schlei & P. Grossman, Employment Discrimination Law, 955–56 (1976). Whether these cases require an exception to the general rules of res judicata is a question we gladly leave for another case.

their claims or in the sense of having slept on their rights—the litigant who has already asserted the arguments he wishes to assert and has received an adverse judgment or the litigant who failed to assert the arguments when he should have done so. The former situation does not arise here: Nilsen has never presented the merits of her § 1983 claim in court. Instead, the problem arises because of the possibility of characterizing Nilsen as a litigant who failed to assert her § 1983 claim in a prior action in which she should have done so. We cannot accept that characterization, though, for Nilsen attempted to assert her claims by amending her complaint. The rule against splitting causes of action is designed to encourage the litigant to raise in a single suit all his claims that bear a certain relationship to the transaction at issue. But the rule has no function if the procedural system does not permit the litigant to raise all of those claims in one proceeding. Thus, for instance, the rule against splitting a cause of action operated on a different definition of "cause of action" before the merger of law and equity, when the system did not permit a litigant to pursue his legal and equitable claims in a single proceeding. *See Developments in the Law—Res Judicata*, 65 Harv.L.Rev. 818, 824 n.33 (1952). As the American Law Institute explains, "Equating claim with transaction ... is justified only when the parties have ample procedural means for fully developing the entire transaction in the one action going to the merits to which the plaintiff is ordinarily confined." Restatement (Second) of Judgments § 61, comment a at 141 (Tent. Draft No. 5, 1978). *See Melaro v. Mezzanotte*, D.C.Cir.1965, 352 F.2d 720, 722.

The operation of the rules of res judicata on claims over which a federal court declines to exercise pendent jurisdiction provides a useful analogy. When a single transaction or occurrence gives rise to some claims within the subject matter jurisdiction of the federal courts as well as some state law claims with no independent basis for federal jurisdiction, the federal courts have discretion to exercise pendent jurisdiction over the state law claims. *United Mine Workers v. Gibbs*, 1966, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218. But if the federal court declines to exercise jurisdiction over the state law claims, in fairness, the claimant must have the opportunity to raise those claims in state court. *See Bowers v. DeVito*, N.D.Ill.1980, 486 F.Supp. 742, 744 n.3; Note, *The Res Judicata Implications of Pendent Jurisdiction*, 66 Cornell L.Rev. 608, 614 & n.26 (1981).[7] Similarly, when the court in *Nilsen II/III* declined to exercise its discretion to permit the amendment of the complaint, fairness requires that Nilsen be given an opportunity to raise those claims in a second proceeding.[8]

Nilsen cannot be barred on the theory that she should have brought her § 1983 claim in *Nilsen II/III* when she attempted

---

**7.** "A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground. If however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should be held not precluded." Restatement (Second) of Judgments § 61.1, comment e at 160 (Tent. Draft No. 5, 1978).

**8.** *See generally Dussuoy v. Gulf Coast Investment Corporation*, 5 Cir. 1981, 660 F.2d 594, 600 n.3. We may disagree with the *Nilsen II/III* court on the question how much discretion a court has in denying leave to amend. The fact remains that here the system operated to allow the federal courts discretion under rule 15(a) to deny leave to amend. When a system does not permit liberal amendment, it is inappropriate to give broad preclusive effect to the inadequacies of the original complaint. *See generally* Restatement (Second) of Judgments § 61, comment a at 142 (Tent. Draft No. 5, 1978).

to do so, and leave to amend was denied.[9] She did what the rule against splitting causes of action encourages her to do: she attempted to consolidate all her claims in one proceeding. It would be unduly harsh and would extend the rule against splitting well beyond its rationale to apply it to a plaintiff who was not permitted to bring her claim in the first proceeding.[10]

We find support for our holding in a number of Title VII and § 1983 decisions. The Supreme Court, in denying preclusive effect to an arbitral determination in a later Title VII suit in *Alexander v. Gardner-Denver Co.*, 1974, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147, was motivated at least in part by the failure of the arbitration proceeding to provide an opportunity to present Title VII claims.[11] The lower courts too offer support. In *Ludwig v. Quebecor Dailies, Inc.*, E.D.Pa.1980, 483 F.Supp. 594, the plaintiff had brought an action little more than a month after her

discharge, asserting claims under §§ 1981, 1983, 1985(3), and 1986. Shortly thereafter, she filed a charge with the EEOC. Her suit was dismissed, and the next day she filed a Title VII suit. The court permitted the Title VII action to proceed because the plaintiff had not received her right-to-sue letter from the EEOC until after the dismissal of the first action; thus, at the time of the first action, the Title VII claim was not a ground of recovery that could have presented in the first action. Similarly, Nilsen's § 1983 claims could not have been presented in her first action by virtue of the court's refusal to entertain those claims in that action. In such circumstances, we refuse to give preclusive effect to *Nilsen II/III* on Nilsen's § 1983 claims.

### III.

As an alternative ground for its decision, the district court ruled that the denial of leave to amend collaterally estopped Nilsen

---

**9.** It is this aspect of the case that distinguishes it from *Harrington v. Vandalia-Butler Bd. of Educ.*, 6 Cir. 1981, 649 F.2d 434, discussed in note 6. The plaintiff there could have raised her § 1983 claims in the first action; as the court stated, "She was free to challenge the validity of *Monroe v. Pape* to the extent that it exempted municipalities from the ambit of § 1983 .... [S]he *elected* not to advance a § 1983 claim in her first action." *Id.* at 437, 438 (emphasis added).

**10.** Presumably Nilsen could have raised her § 1983 claim in *Nilsen II/III* had she brought it as part of her original complaint. In that sense, she had an opportunity to raise this claim in an earlier action. Whether that opportunity alone suffices to justify barring her claim now is simply another way of stating the question to be discussed in Part III below: is a denial of leave to amend equivalent to a determination that laches has run? If the court in *Nilsen II/III* was considering the factors that would lead to a determination of laches, it was considering the survival of the claim. And, if it then determined that the claim was to be forever lost, in making that determination, it gave Nilsen the necessary opportunity to raise her claim. If, on the other hand, the question the court in *Nilsen II/III* was considering was simply whether that proceeding was the proper time and forum in which to raise the § 1983 claim, a determination that it was not did not give Nilsen an adequate opportunity to raise her claim. *See* Part III.

We do note, however, that the change that occurred in governing law does not alone render Nilsen's opportunity inadequate. At the time Nilsen filed her suit, the prevailing rule was that of *Monroe v. Pape*, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492: municipalities were not persons within the ambit of § 1983. That rule, of course, has since been changed; in *Monell v. Dept. of Social Servs.*, 1978, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611, the Supreme Court held that municipalities could be liable for § 1983 violations. Certiorari was granted in *Monell* on January 25, 1977, 429 U.S. 1071, 97 S.Ct. 807, 50 L.Ed.2d 789, and approximately five months later, Nilsen moved to amend her complaint to state a § 1983 claim against the city. The prevailing rule may well have deterred her from raising her § 1983 claim earlier. Nonetheless she was free to challenge *Monroe v. Pape* by raising that claim, and we do not view the *Monroe v. Pape* as rendering nugatory her opportunity to assert a § 1983 claim. *Harrington v. Vandalia-Butler Bd. of Educ.*, 6 Cir. 1981, 649 F.2d 434, 437.

**11.** *See also Electrical, Radio and Machine Workers Local 790 v. Robbins & Myers, Inc.*, 1976, 429 U.S. 229, 237 n.10, 97 S.Ct. 441, 447 n.10, 50 L.Ed.2d 427 (in dictum, Court stated that Title VII statute of limitations not tolled by institution of union grievance procedures, reasoning in part, "There is no assertion that Guy was 'prevented' from filing a charge with the EEOC ..."); *Marino v. Willoughby*, 618 P.2d 728 (Colo.App.1980).

to relitigate the issue of laches and that laches was a complete defense to the § 1983 claim.

Nilsen argues first that, since she requests both legal and equitable relief, the statute of limitations [12] rather than laches governs the timeliness of her claim.[13] Several cases hold that when a § 1983 action is brought for both damages and equitable relief, the statute of limitations, and not laches, controls both the legal and equitable part. *Mizell v. North Broward Hospital District*, 5 Cir. 1970, 427 F.2d 468 (on petition for rehearing); *Swan v. Board of Higher Education*, 2 Cir. 1963, 319 F.2d 56, 59 n.5; *Graffals Gonzalez v. Garcia Santiago*, D. P.R.1976, 415 F.Supp. 19, aff'd, 1 Cir. 1977, 550 F.2d 687; *Cestaro v. Mackell*, E.D. N.Y., 429 F.Supp. 465 aff'd without op., 2 Cir. 1977, 573 F.2d 1288; *Needleman v. Bohlen*, D.Mass.1974, 386 F.Supp. 741, 749; cf. *Saffron v. Department of the Navy*, D.C.Cir.1977, 561 F.2d 938 (suit for backpay, damages, and reinstatement in government employment), *cert. denied,* 1978, 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780; *Baker v. F & F Investment*, 7 Cir., 420 F.2d 1191, 1193 (§ 1982), *cert. denied,* 1970, 400 U.S. 821, 91 S.Ct. 42, 27 L.Ed.2d 49; *Morgan v.*

*Koch,* 7 Cir. 1969, 419 F.2d 993, 996 (Securities Exchange Act) (dictum). Most of these cases, and in particular the case in this circuit, seem to assume that laches provides a *longer* period than does the statute of limitations.[14] *Cf.* Note, *Laches in Federal Substantive Law: Relations to Statutes of Limitations,* 56 B.U.L.Rev. 970, 976–81 (1976) (considering running of statute of limitations as a factor in determining whether laches has run). Indeed, the Supreme Court opinions often cited for the proposition that the statute of limitations governs both legal and equitable relief in cases of concurrent jurisdiction stated only that equity will withhold relief when the statute of limitations on the analogous legal claim has run. *Cope v. Anderson*, 1947, 331 U.S. 461, 464, 67 S.Ct. 1340, 1341, 91 L.Ed. 1602; *Russell v. Todd*, 1940, 309 U.S. 280, 289, 60 S.Ct. 527, 532, 84 L.Ed. 754. Thus, they considered only the case in which laches provides the longer period. When dealing with other statutes, this circuit has stated that, in a proper case, laches could apply to a mixed federal claim. *United Transportation Union v. Florida East Coast Railway Co.*, 5 Cir. 1978, 586 F.2d 520, 524–25 (Rail-

12. Since § 1983 has no federal statute of limitations, courts apply the most closely analogous state limitations period, here agreed to be six years, *Truvillion v. King's Daughters Hosp.*, 5 Cir. 1980, 614 F.2d 520, 528.

13. The appellee notes in its brief that Nilsen has questioned the applicability of laches for the first time on this appeal. It does not, however, suggest that we should refuse to consider the question. Particularly in the absence of a strong argument from the appellee that we not consider the question, and in the light of the opportunity each party had to file supplemental briefs on the laches question, we think it appropriate to resolve this issue now. While it is true that appellate courts often decline to consider issues raised for the first time on appeal, *see, e.g., Guerra v. Manchester Terminal Corp.*, 5 Cir. 1974, 498 F.2d 641, the Supreme Court has described the matter as "one left primarily to the discretion of the courts of appeals, to be exercised on the facts of the individual cases", *Singleton v. Wulff,* 1976, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826; *see Stanley Educ. Methods, Inc. v. The Becker C.P.A. Review Course, Inc.*, 5 Cir. 1976, 539 F.2d 393 (per curiam) (on petition for rehearing). Particularly when a question is one of pure law, and

when refusal to consider it will lead to an incorrect result or a miscarriage of justice, appellate courts are inclined to consider questions first raised on appeal. *See, e.g., Martinez v. Mathews,* 5 Cir. 1976, 544 F.2d 1233, 1237; *Evans v. Triple R Welding & Oil Field Maintenance Corp.*, 5 Cir. 1973, 472 F.2d 713; *Empire Life Ins. Co. v. Valdak Corp.*, 5 Cir. 1972, 468 F.2d 330.

14. In fact, the only case where that assumption does not seem to operate is *Needleman v. Bohlen*, D.Mass.1974, 386 F.Supp. 741, where the court refused to consider whether the action was barred by laches after holding that the statute of limitations had not been properly pleaded as a defense. We do not consider that case controlling, for the law of the First Circuit differs from ours in this area; there, laches is never a bar to a § 1983 action, even if the complaint requests only equitable relief, *DeLuca v. Sullivan,* D.Mass.1977, 450 F.Supp. 736, while in this circuit, laches can bar a prayer for equitable relief under § 1983, *see, e.g., McCarthy v. Askew,* S.D.Fla., 420 F.Supp. 775, aff'd on another point, 5 Cir. 1976, 540 F.2d 1254 (per curiam).

way Labor Act); *United States v. Georgia Power Co.*, 5 Cir. 1973, 474 F.2d 906, 923 (Title VII); *see also Tobacco and Allied Stocks, Inc. v. Transamerica Corp.*, 3 Cir. 1957, 244 F.2d 902. Consequently, we consider still open the question whether laches will bar all relief in a mixed § 1983 claim when the statute of limitations has not run.

■ The key concern in selecting a rule for mixed claims was expressed well by the Ninth Circuit in *Royal Air Properties v. Smith*, 9 Cir. 1962, 312 F.2d 210, 214: "The applicable period of limitations should not depend 'on the turn of a word fixed by a plaintiff at the pleading stage.'" *See Swan v. Board of Higher Education*, 2 Cir. 1963, 319 F.2d 56, 59 n.5; *Tobacco and Allied Stocks, Inc. v. Transamerica Corp.*, D.Del.1956, 143 F.Supp. 323, 326–27, *aff'd on another point*, 3 Cir. 1957, 244 F.2d 902. Thus, a claim should be treated as one requesting mixed relief if mixed relief is available, regardless of whether the plaintiff actually requests more than one type of relief. A plaintiff should not be deterred from adding a request for injunctive relief to his claim for compensatory damages because he fears that the addition will leave his claim for damages subject to a short laches period rather than to a longer period provided by the statute of limitations. When we consider this reasoning along with settled precedent establishing that laches can bar an equitable claim but only the statute of limitations will bar a legal claim,[15] we think that although the equita-

ble part of a mixed claim can be barred by laches, the legal part will be barred only by the statute of limitations.

■ Therefore, Nilsen's legal claims survive the city's assertion of a laches defense. With respect to the equitable claims, which may be barred by laches, we must still decide whether the laches period has run as a matter of law.

■ The district court reasoned that the determination of delay and prejudice that supported the denial of leave to amend in *Nilsen II/III* establish as a matter of law that laches has run. We agree with the appellee that, in general, both prejudice and delay enter into the decision of a motion for leave to amend, *see, e.g., Dussuoy v. Gulf Coast Investment Corp.*, 5 Cir. 1981, 660 F.2d 594, 598–99; *Griggs v. Hinds Junior College*, 5 Cir. 1977, 563 F.2d 179 (per curiam); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1484 (1971); Note, *Laches in Federal Substantive Law: Relations to Statutes of Limitations*, 56 B.U.L.Rev. 970, 971 (1976);[16] and that the *Nilsen II/III* courts found both elements. 621 F.2d at 122. We do not, however, agree that the standards for delay and prejudice necessary to establish that denial of leave to amend is appropriate automatically establish that laches has run.

■ We have not found any cases exploring the relationship between the rule 15(b) standards and the laches standards.[17]

**15.** *See, e.g., Stewart v. Wappingers Central School Dist.*, S.D.N.Y.1977, 437 F.Supp. 250, 255, *amended on another point*, S.D.N.Y.1980, 493 F.Supp. 791; *Woodrum v. Abbott Linen Supply Co.*, S.D.Ohio 1977, 428 F.Supp. 860 (dictum); *M. Lowenstein & Sons, Inc. v. Austin*, S.D.N.Y.1977, 430 F.Supp. 844; *cf. Saffron v. Department of the Navy*, D.C.Cir.1977, 561 F.2d 938, 941 (describing laches as "peculiarly a creature of equity"), *cert. denied*, 1978, 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780; *Sandobal v. Armour and Co.*, 8 Cir. 1970, 429 F.2d 249, 257 (laches ordinarily applies only in equitable actions).

**16.** In some cases, the delay may become so long that the required degree of prejudice decreases, or the burden of proof shifts. *See Dussuoy v. Gulf Coast Investment Corp.*, 5 Cir. 1981, 660 F.2d 594, 598 n.2; *Gregory v. Mitch-*

*ell*, 5 Cir. 1981, 634 F.2d 199, 203. The same is true of the degree of prejudice required to establish laches. *See, e.g., Russell v. Todd*, 1940, 309 U.S. 280, 289, 60 S.Ct. 527, 532, 84 L.Ed. 734; *Grisham v. United States*, Ct.Cl., 392 F.2d 980, 983, *cert. denied*, 1968, 393 U.S. 843, 89 S.Ct. 125, 21 L.Ed.2d 114; *Avondale Shipyards, Inc. v. The Vessel Thomas E. Cuffe*, E.D.La. 1977, 434 F.Supp. 920.

**17.** We are aware of a few cases employing laches terminology in denying leave to amend, *Wheeler v. West India S.S. Co.*, 2 Cir., 205 F.2d 354 (per curiam), *cert. denied*, 1953, 346 U.S. 889, 74 S.Ct. 141, 98 L.Ed. 393; *Perez v. Chutick & Sudakoff*, 1970 S.D.N.Y., 50 F.R.D. 1; *Tarbert v. Ingraham Co.*, D.Conn.1960, 190 F.Supp. 402 (alternative holding). Each of those cases held that the movant was guilty of

It is clear that the basic concerns are the same. Rule 15 requires the court to consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by previously allowed amendments, and prejudice to the opponent. *See, e.g., Foman v. Davis,* 1962, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226; *Dussuoy v. Gulf Coast Investment Corp.,* 5 Cir. 1981, 660 F.2d 594, 598. Laches requires an unexcused delay, with undue prejudice to the party against whom the claim is asserted. *See, e.g., Environmental Defense Fund v. Alexander,* 5 Cir. 1980, 614 F.2d 474, 478; *Avondale Shipyards, Inc. v. The Vessel Thomas E. Cuffe,* E.D.La.1977, 434 F.Supp. 920, 932. Both rules then are concerned with preventing a claimant from asserting a claim in a time or manner that is inequitable to the party against whom it is asserted while also protecting claimants whose failure to raise the claim earlier is excusable or nonprejudicial. The language of the cases provides us little guidance in comparing the two standards. The different roles of the two standards in the procedural system, however, convince us that they are not necessarily identical. A denial of leave to amend need not mean that the claim sought to be asserted will never be heard in any court, as would a determination that laches had run. For instance, at the beginning of an action, a plaintiff is free to join any claims that he may have against the defendant regardless of whether they are factually related. Fed.R.Civ.P. 18(a). If he attempts to amend to include an unrelated claim on the eve of trial, the district court would be justified in denying leave to amend, upon a finding of delay and prejudice. But the denial does not bar the unrelated claim forever; it merely tells the plaintiff that he has chosen the wrong forum or time to assert it. Given this functional difference, the rule 15 standard in such a case should not be as strict as the laches standard.

When the claim asserted in the proposed amendment is so closely related to the subject matter of the action that, absent the attempt to amend, res judicata would bar the claim as part of the "same cause of action", we see some appeal to a rule that the rule 15 standard must reflect the rigor of the laches standard; indeed, were we confronted with a motion to amend under rule 15 in such a situation, we would hesitate to deny leave without applying the laches standard, for fear that the denial of leave to amend would later be given res judicata effect. *See Dussuoy,* 660 F.2d at 600 n.3. But we cannot hold with any certainty that that was the view of the *Nilsen II/III* court, for two reasons. First, the rule 15 standard may in some cases allow a limited discretion to the trial court to deny leave to amend to include a transactionally related claim even if laches has not run. Second, the judge faced with the motion to amend has an alternate means of dealing with the motion that reaches precisely the result of disposing of the claim forever: he can permit the amendment and grant judgment on the pleadings or summary judgment, dismissing the claim as untimely.[18] Indeed, in this case, the defend-

laches and therefore would not be permitted to amend his pleadings. The situation before us now is the converse: the plaintiff has not been permitted to amend and the question is whether she is guilty of laches. The cases mentioned offer no guidance on that point.

18. This situation is distinguishable from the problem presented by *Carter v. The Money Tree Co.,* 8 Cir., 532 F.2d 113, *cert. denied,* 1976, 426 U.S. 925, 96 S.Ct. 2636, 49 L.Ed.2d 380, and *Rinehart v. Locke,* 7 Cir. 1971, 454 F.2d 313. In both those cases, the complaint was dismissed, and the plaintiff then sought leave to amend. That situation does not present the same ambiguity with which we are

faced, for, after dismissal of the original complaint, the court has no action other than the amendment before it at the time it considers the amendment. Thus it is clearer that the disposition of the motion for leave to amend is not simply a means of telling the plaintiff that he has chosen the wrong action in which to bring a claim that would otherwise be entertained. Furthermore, *Rinehart* was only an alternative holding, for the plaintiff was barred by the statute of limitations in any event, and, in the first action in *Carter,* the court had specified that the denial of leave to amend was "with prejudice", eliminating any possible ambiguity.

ant urged the *Nilsen II/III* court to dismiss or grant summary judgment (although on other grounds) if it chose to permit the amendment. Given that the court had that unambiguous option available to it, we refuse to render a denial of leave to amend unambiguous well after the fact by holding that it bars later litigation of the claim. When a holding depends on ambiguous grounds, neither ground is the subject of collateral estoppel. *Melaro v. Mezzanote*, D.C.Cir.1969, 352 F.2d 720, 721 n.2.

### IV.

We hold, therefore, that *Nilsen II/III* does not bar the claims asserted now. Laches may bar the equitable relief sought, although the question of laches is a factual one that cannot be resolved at this stage of the proceeding; the plaintiff is not estopped on the questions of delay and prejudice. The survival of Nilsen's claims for legal relief is governed by the Mississippi statute of limitations. The case is REVERSED and REMANDED for further proceedings consistent with this opinion.

### ON REHEARING AND REHEARING EN BANC

Before CLARK, Chief Judge, BROWN, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY and HIGGINBOTHAM, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by the Court en banc without oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.